# Supreme Court of the Navajo Nation

**Marvin Malone, Richard Malone,
and Martha Malone, Appellants,
v.
Grace M. Yazzie, Dorothy Sneddy,
and Robert Brown Sr., Appellees.
Decided July 11, 1994**

## OPINION

Before YAZZIE, Chief Justice, and AUSTIN, Associate Justice.

Leonard Tsosie, Esq., Crownpoint, Navajo Nation (New Mexico), for the Appellants; and Daniel Deschinny, Sr., Esq., Window Rock, Navajo Nation (Arizona), for the Appellees.

Opinion delivered per curium.

### I

This appeal involves an on-going dispute over a grazing permit and a plot requested for a homesite lease in an area located within the Twin Lakes Chapter. It concerns the parties and others who claim an interest in the land. We vacate the district court's injunction and remand for further proceedings.

### II

The Appellees, Grace M. Yazzie, Dorothy Sneddy, and Robert Brown, Sr., have a grazing permit granted to them following the probate of their late brother's estate.[1] In October 1988, Appellant Marvin Malone applied for a homesite lease on the disputed land and proceeded to build a house there in 1991.

On June 17, 1991, the Appellees filed a Petition for Declaratory Judgment and a Motion for a Permanent Injunction in the Crownpoint District Court to enjoin Appellant Marvin Malone's house construction activities. They asserted that Appellant Malone was building a house on their claimed land use area without

---

1. The district court found that in 1985, the Appellees inherited a thirty-sheep-unit grazing permit from their deceased brother, Archie Brown. *Grace M. Yazzie, Dorothy Sneddy, and Robert Brown, Sr. v. Marvin Malone, Richard Malone, and Martha Malone*, No. CP-CV-85-91 (Crownpoint District Court, decided May 1993).

their consent and an authorized homesite lease. The district court heard the petition for the injunction and, on May 24, 1993, the Appellants were permanently enjoined from performing any construction activities and using the Appellees' claimed land use area.

The Appellants appeal the May 24, 1993 decision to this Court.

## III

The issue is whether the Crownpoint District Court or the Central Grazing Committee of the Navajo Nation Council has jurisdiction over this land dispute.

## IV

A review of the record reveals broader issues than what was originally presented to the Court. The dispute over the homesite lease and grazing permit is a part of a bigger dispute between the parties on appeal, and others, concerning use rights to the land. A decision on the issues of the grazing permit and the homesite lease, alone, will not settle the entire matter. For that reason, we believe that the bigger dispute concerning the various parties' alleged interests in the land must be decided before the grazing permit and homesite lease issues can be resolved.

Which forum, the district court or the Central Grazing Committee, has jurisdiction to decide the land dispute? This Court ruled in *In re Mary Ellis Joe Customary Use Area*, 6 Nav. R. 177 (1990), that district grazing committees did not have the power to decide land dispute cases. A grazing committee's power, as set forth by statute in effect at the time, was limited to mediation of a land dispute case. *Id.* Our holding was subsequently overruled by the Navajo Nation Council. *Navajo Nation Council Resolution* No. CN-72-92 (November 12, 1992).

On November 12, 1992, President Peterson Zah signed into law that Resolution to "address the practical problem created by the decision of the Supreme Court in *RE: Mary Ellis Joe Customary Use Area.*" *Id.* The Resolution stated that "[i]f Navajo law, as interpreted by the Supreme Court is not amended, the Navajo people will be forced to bring all disputes to the Courts, rather than [before] the Grazing Committees and the Central Grazing Committee as they have been used to [doing]." *Id.*

Resolution No. CN-72-92, which amends Sections 691-696 of Title Two of the Navajo Nation Code, states that:

...

(b) The Resources Committee shall have the following powers, including the authority to delegate to appropriate executive branch officials within the Division of Natural Resources[;] provided that the Committee first approves rules and regulations governing such delegations and to rescind such delegations, and to adopt resolutions, regulations, or policies that shall be necessary

and proper for carrying into execution the following powers:

(1) To act as the Central Grazing Committee with authority to review, monitor, mediate, and resolve disputes concerning land boundaries, grazing rights and fences within the Navajo Nation. Any decision shall be appealable to the Navajo Nation Courts.

...

(4)(i) To give final approval of homesite lease and certificate procedures; including the authority to review and decide disputes and complaints relating to any homesite leases, or certificate, and promulgate rules and regulations thereto.

*Navajo Nation Council Resolution* No. CN-72-92, Section 695.

The Appellants argue that Resolution No. CN-72-92 divested the district court of jurisdiction to decide this case and the matter should have been transferred to the grazing committee for resolution. On the other hand, the Appellees argue that the district court has jurisdiction to hear this case, because Resolution No. CN-72-92 did not abolish the court's authority to decide those land dispute cases filed prior to November 12, 1992; the date Resolution No. CN-72-92 became effective.

In light of Resolution No. CN-72-92 and Navajo case law, we agree with the Appellees. The Crownpoint District Court has jurisdiction to decide this dispute because the case was filed in that court before November 12, 1992, and at that time, the *In re Mary Ellis Joe* decision was the controlling law. Between the *In re Mary Ellis Joe* decision and enactment of Resolution No. CN-72-92, it is undisputed that the Navajo courts had original jurisdiction over land dispute cases.

We have thoroughly examined Resolution No. CN-72-92 to determine if the Navajo Nation Council intended that land dispute cases pending in the courts on the effective date of the Resolution should be transferred to appropriate grazing committees. We found none. The Resolution does not contain specific or explicit language on that issue. We conclude that the courts continued to have jurisdiction over all land dispute cases filed in the courts between the time of the *In re Mary Ellis Joe* decision and November 12, 1992.

Finally, we find that in terms of judicial economy, it is better to keep this case in the district court, as opposed to the Central Grazing Committee, because the records are in the court's possession. That will save time and expenses for the parties and others who will likely become parties in the case on remand. In addition, the trial court is already familiar with the facts and issues in the case. We hold that the Crownpoint District Court has jurisdiction over this case.

## V

The Appellees argue that many people, in addition to the Appellee Grace Yazzie, claim an interest in the land; the subject of this dispute. The Appellees argue that those individuals, currently non-parties to this case, were not notified

of the proceedings before the district court. The Appellees further suggest that many people with an interest are elderly and do not speak or read the English language. They may not have received sufficient notice of the proceedings. These arguments are supported by the record before the Court.

For these reasons, this Court vacates the permanent injunction issued against the Appellants. On remand, the Crownpoint District Court shall enter a preliminary injunction against Appellant Marvin Malone, enjoining his construction activities, so that the status quo can be preserved until the district court reaches a final decision on the land dispute.

On remand, the Crownpoint District Court shall rehear all of the land dispute issues, which necessarily will include Appellant Marvin Malone's request for a homesite plot on the disputed land, and the issues concerning the grazing permit. All persons claiming an interest in the disputed land must be served with notice of the proceedings. The district court is instructed to identify the boundaries of the area in dispute and all persons claiming an interest. Extensive discovery will be necessary so that no party is left out of this process; this includes persons currently possessing a homesite lease and grazing permit. Preservation of the status quo is necessary for the district court to decide this matter. Therefore, all parties must be notified that construction of any type shall be prohibited until after the district court renders its decision.

The permanent injunction is vacated and the case is remanded to the Crownpoint District Court.